IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

**JOSHUA A. YOUNG,**

    **Plaintiff,**

v.                                                                                    Civ. Act. No. 2:19-cv-00559

**CORPORAL ARTHUR MUNCY,**
**CAPTAIN RONNIE THOMPSON,**
**and BETSY JIVIDEN, Commissioner of the**
**West Virginia Division of Corrections**
**and Rehabilitation,**

    **Defendants.**

## COMPLAINT

1.  This case arises from the Defendants' violations of the Fourteenth Amendment to the United States Constitution, for excessive force in the form of sexual assault. The Plaintiff, Joshua A. Young, while incarcerated at South Central Regional Jail, was subjected to a sexual assault by Corporal Muncy, who grabbed Plaintiff's genitals and squeezed so tightly that he caused Plaintiff permanent injuries. Thereafter, Plaintiff's complaints and requests for protection from Corporal Muncy were ignored by the administration at South Central Regional Jail, Plaintiff was subjected to further harassment by Corporal Muncy, and Plaintiff was not afforded the protections due to him under the Prison Rape Elimination Act. Plaintiff brings this suit for damages, as well as declaratory and injunctive relief.

2.  Plaintiff Young submits this complaint pursuant to 42 U.S.C. § 1983, alleging violations of his rights under the Fourteenth Amendment to the United States Constitution, as well as violations of state law.

## PARTIES

3. At the time of the incident at issue, Plaintiff Joshua A. Young was a thirty-seven year old, pretrial detainee held at South Central Regional Jail and Correctional Facility (South Central) in Charleston, West Virginia. Plaintiff is currently housed at Salem Correctional Center and is expected to be released on parole this year.

4. Defendant Betsy Jividen is the Commissioner of the West Virginia Division of Corrections and Rehabilitation (WVDCR). The WVDCR is the administrative division of the West Virginia Department of Military Affairs and Public Safety tasked with administering and exercising direct and effective control over prisons and jails in West Virginia, including South Central. WVDCR is an "agency" for purposes of the Prison Rape Elimination Act (PREA), and is subject to the national standards governing the implementation of that Act. *See* 28 C.F.R. § 115.5.

5. As Commissioner of the WVDCR, Defendant Jividen is vested with executive authority and responsibility for the administration, operation, and control of all WVDCR facilities and employees of WVDCR facilities. Defendant Jividen's duties include establishing, monitoring, and enforcing policy directives and procedures that ensure constitutional confinement and treatment of all people in the custody of the WVDCR. Among other things, Commissioner Jividen is charged with implementing the PREA National Standards, and ensuring PREA audits are conducted in all WVDCR facilities in accordance with law.

6. As Commissioner of the WVDCR, Defendant Jividen further owed a duty to plaintiff to provide reasonably safe confinement at its facilities, and a duty to take reasonable measures to see that inmates were not subjected to cruel and unusual punishment, sexual abuse, sexual harassment, or sexual assault by staff.

7. As part of that duty, under West Virginia law, Commissioner Jividen is responsible for ensuring that each correctional officer hired to work in a WVDCR facility undergoes a psychological evaluation to determine his or her fitness for the job; thereafter, the Commissioner is responsible for ensuring additional psychological evaluations are performed when a justifiable need exists during the officer's employment.

8. At all relevant times, Defendant Jividen was acting under the color of state law. Defendant Jividen is named solely in her official capacity for the purposes of seeking declaratory and prospective injunctive relief.

9. Defendant Ronnie Thompson is a correctional officer who was, at all relevant times, employed at the rank of Captain at South Central. As a captain, Defendant Thompson was tasked with responsibilities relating to inmate security and safety, and owed a duty to plaintiff to provide reasonably safe confinement. Among other things, Defendant Thompson had a duty to take reasonable measures to see that inmates were not subjected to cruel and unusual punishment, sexual abuse, sexual harassment or sexual assault by staff.

10. Upon information and belief, Defendant Thompson either engaged in the review, investigation, and resolution of PREA complaints at South Central, or oversaw that process.

11. At all times alleged herein, Defendant Thompson was acting under the color of law and within the apparent scope of his employment as a ranking correctional officer. Defendant Thompson is sued in his individual capacity up to the limits of the insurance policy which provides liability coverage for his actions and inactions.

12. Defendant Arthur Muncy is a correctional officer who was, at all relevant times, employed at the rank of Corporal at South Central Reginal Jail and Correctional Facility.  Upon

information and belief, Defendant Muncy has not undergone the requisite psychological testing as required by West Virginia law.

13. At all times alleged herein, Defendant Muncy was acting under the color of law and within the apparent scope of his employment as a correctional officer. Defendant Muncy is sued in his individual capacity up to the limits of the insurance policy which provides liability coverage for his actions and inactions.

## JURISDICTION AND VENUE

14. This Court has jurisdiction over the federal claims presented in this action pursuant to 28 U.S.C. §§ 1331 and 1343 and has jurisdiction over the state claims under the Court's authority to decide pendent state law claims. Declaratory relief is authorized by 28 U.S.C. §§ 2201-2202.

15. Venue is proper in this judicial district under 28 U.S.C. § 1391(b) because all of the events that support the allegations occurred in this judicial district.

## PRISON RAPE ELIMINATION ACT

16. The Prison Rape Elimination Act (PREA), 34 U.S.C. § 30301, *et seq.*, was established by Congress to, in part, protect the Eighth Amendment rights of federal, state, and local prisoners. *Id.* at § 30302(7).

17. Pursuant to PREA, national standards now govern the responsibilities of all state correctional agencies, including the WVDCR and South Central, with regards to reports of sexual assault by inmates. *See id.* at § 30307; 28 C.F.R. § 115, *et. seq.*

18. Among other things, all correctional employees who may have contact with inmates are required to be trained on the rights of inmates to be free from sexual abuse and sexual harassment; how to "fulfill their responsibilities under agency sexual abuse and harassment

prevention, detection, reporting, and response policies and procedures;" and how to comply with relevant laws requiring mandatory reporting to outside authorities. 28 C.F.R. § 115.31.

19. Agencies, including WVDCR, must provide multiple ways for an inmate to privately report sexual abuse, sexual harassment, and retaliation by staff for reporting sexual abuse and sexual harassment, within the agency. 28 C.F.R. § 115.51.

20. Moreover, the agency must also provide at least one way for inmate to report the abuse and harassment to an entity that is not part of the agency. *Id.*

21. The agency shall additionally provide the inmate with access to outside victim advocates for emotional support services, by providing addresses and telephone numbers and enabling reasonable communication between the inmate and those agencies, in as confidential a manner as possible. *Id.* at § 115.53.

22. When the agency receives a PREA complaint alleging sexual abuse, the agency "shall use investigators who have received training in sexual abuse investigations." *Id.* at § 115.71.

23. Administrative investigations "[s]hall include an effort to determine whether staff actions or failures to act contributed to the abuse; and [s]hall be documented in written reports that include a description of the physical and testimonial evidence, the reasoning behind credibility assessments, and investigative facts and findings." *Id.*

24. "The agency shall impose no standard higher than a preponderance of the evidence standard in determining whether allegations of sexual abuse or sexual harassment are substantiated." *Id.* at § 115.72.

25. The agency shall also have in place a policy to ensure that "allegations of sexual abuse or sexual harassment are referred for investigation to an agency with the legal authority to

conduct criminal investigations," and such policy is to be published on the agency's website, if one exists. *Id.* at § 115.22(b).

26. The agency shall ensure inmates are protected from retaliation for making a report of sexual abuse or sexual harassment, including retaliation from staff, and shall designate staff members or departments to monitor retaliation; such monitoring must continue for at least 90 days after the alleged incident. *Id.* at § 115.67.

State Implementation of PREA Requirements

27. Under policies governing inmate PREA reports arising from West Virginia jails and correctional facilities, when an inmate reports alleged sexual harassment or abuse, the report is to be reviewed by the agency PREA Coordinator. Dept. of Military Affairs and Public Safety Corr. Ops 3(3)(b) (Oct. 4, 2017).

28. The agency PREA Coordinator then determines whether the compliant should be investigated, and if so, refers the matter to the Deputy Director of the Department of Military Affairs and Public Safety (DMAPS) Investigations Unit, for the assignment of an Investigator. *Id.*

29. Upon conclusion of the investigation, a report is to be prepared and provided to the PREA Coordinator. *Id.*

## FACTUAL BACKGROUND

Plaintiff Sexually Abused and Harassed by Defendant Muncy

30. On April 25, 2018, Plaintiff Young was a pretrial detainee at South Central Regional Jail and Correctional Facility, housed in Pod C4, Cell 8.

31. During the evening hours of April 25, 2018, Corporal Muncy approached and entered Plaintiff's cell.

32. Upon information and belief, Corporal Muncy did not follow protocol when he entered Plaintiff's cell without another officer, and while Plaintiff and his cellmate were still in the cell.

33. Corporal Muncy was upset with the inmates on Pod C4 at the time, including Plaintiff.

34. While in Plaintiff's cell, Corporal Muncy backed Plaintiff Young against the wall, grabbed his genitals, and squeezed extremely forcefully; while doing so, Corporal Muncy stated to Plaintiff that if he had any more trouble from him, he would rip off Plaintiff's penis and "fuck" Plaintiff in his "ass" with it.

35. Thereafter, Corporal Muncy made additional sexually assaultive statements, including that if he could he would have Plaintiff and others transferred to general population, where they would "all get fucked," and referring to Plaintiff and others as "PC whores."

36. Plaintiff was left in his cell in excruciating pain.

Plaintiff Files PREA Complaint

37. Plaintiff, who was locked in his cell, hit the emergency call button over and over, seeking to summon assistance from an officer or nurse.

38. After approximately an hour, a correctional officer came through Plaintiff's pod to do a routine check.

39. Plaintiff told this officer that he wanted to file a PREA complaint.

40. Plaintiff was provided with a form to fill out, in which he described the incident, and was taken to meet with a lieutenant at South Central, who questioned him about the incident and accepted his PREA complaint.

41. Plaintiff was not informed of his right to file a separate grievance through the regular grievance process.

42. Plaintiff was not provided with contact information for outside victim advocates for emotional support services.

<u>Plaintiff Seen by Medical and Mental Health Providers</u>

43. Late that night, Plaintiff was seen by medical staff, who evaluated Plaintiff and ordered a testicular ultrasound.

44. Plaintiff continued to suffer severe pain in his groin from the incident, as well as severe anxiety, paranoia, and emotional distress relating to the assault.

45. On or about April 30, 2018, five days after the incident, Plaintiff was seen by a psychologist for a mental health assessment related to his PREA complaint; the psychologist noted that he was depressed, anxious, and restless during the appointment.

<u>Plaintiff's PREA Determined to be "Unfounded" by Captain Thompson</u>

46. For days afterwards, Plaintiff heard nothing further regarding his PREA complaint.

47. Finally, Defendant Captain Thompson summoned Plaintiff to his office and informed Plaintiff that he had investigated the allegation, determined that it was unfounded, and threatened Plaintiff that if he continued to "lie" about what happened, he would face disciplinary sanctions.

48. When Plaintiff protested, Captain Thompson informed him that no further investigation would be done.

49. Plaintiff was not provided with anything in writing, nor was he informed of having any ability to appeal the decision by Captain Thompson.

Defendants Thompson and Jividen Fail to Ensure PREA Requirements Are Met

50. At no time was Plaintiff provided with a way to report the abuse and harassment to an entity that was not part of the WVDCR.

51. At no time was Plaintiff provided with access to outside victim advocates for emotional support services.

52. Upon information and belief, Plaintiff's PREA report alleging sexual abuse was not provided to the agency PREA Coordinator as required by DMAPS policy, and no investigation was initiated by the DMAPS Investigations Unit.

53. Upon information and belief, Plaintiff's allegations of sexual abuse were never referred to an agency with legal authority to conduct a criminal investigation.

54. Upon information and belief, WVDCR does not have a policy ensuring that PREA allegations of sexual abuse will be referred to an agency with legal authority to conduct a criminal investigation, nor has it posted such policy on its website.

55. Upon information and belief, WVDCR does not have adequate policies or procedures in place to effectuate proper compliance with PREA, including adequate and consistent auditing, training, counseling, and disciplinary actions for WVDCR employees.

Corporal Muncy Continues to Harass and Retaliate Against Plaintiff

56. Upon information and belief, Defendant Thompson informed Defendant Muncy of Plaintiff's PREA allegations.

57. Despite knowing that Defendant Muncy was aware of Plaintiff's allegations, Defendant Thompson continued to assign Defendant Muncy, or allow him to be assigned, to regularly work on Plaintiff's pod.

58. Defendant Muncy began to harass Plaintiff in retaliation for his PREA complaint.

59. Defendant Muncy told Plaintiff that the only thing filing the PREA complaint did was "make your time here a lot harder;" Plaintiff understood this to mean that Defendant Muncy would retaliate against Plaintiff for filing the PREA complaint.

60. Corporal Muncy proceeded to harass Plaintiff on numerous occasions, including:

(a) Directing Plaintiff to pack all his belongings and then transporting him to an interview room, where he left Plaintiff overnight with no explanation, until a new shift of officers arrived, who then returned him to his cell;

(b) Approaching Plaintiff while he was showering and demanding he exit the shower with no cause, creating great apprehension for Plaintiff; and

(c) Grabbing Plaintiff by the arm and twisting it painfully behind his back without justification.

Plaintiff's Requests for Help are Denied

61. On or around May 31, 2018, Plaintiff filed a grievance through South Central's grievance system, reporting that Corporal Muncy was continuing to harass him, and that Muncy had put his hands on him two times that week.

62. Plaintiff requested that Defendant Muncy be kept away from him.

63. That grievance was not responded to until July 7, 2018, as which point Defendant Captain Thompson stated "this has already been addressed with you."

64. Upon information and belief, Captain Thompson was referring to his decision finding that Plaintiff's PREA was unfounded, as Captain Thompson had not spoken with Plaintiff in response to the May grievance.

65. Defendant Thompson did not treat Plaintiff's allegations of retaliation for his PREA complaint as required by PREA or Regional Jail policies, and did not take steps to protect Plaintiff from retaliation by Defendant Muncy.

Referral to CAMC for Medical Treatment

66. Plaintiff continued to suffer from constant testicular pain and erectile dysfunction.

67. Plaintiff was seen by a medical provider at South Central in or around June 3, 2018, who referred Plaintiff to an urologist at Charleston Area Medical Center (CAMC).

68. On or about August 9, 2018, Plaintiff was seen by an urologist at CAMC who diagnosed Plaintiff with "chronic testicular pain that is likely a cord spasm and nerve related pain from trauma."

69. The physician at CAMC informed Plaintiff that the pain he is enduring will likely be permanent, and the only potential cure would be to amputate Plaintiff's testicles.

70. To treat the ongoing pain, the physician prescribed Gabapentin, which is used to treat chronic pain due to damaged nerves.

South Central Refuses to Provide Prescribed Medical Treatment to Plaintiff

71. Upon returning to South Central, Plaintiff was provided with his prescription for Gabapentin for a total of three days.

72. After three days, he was informed by medical personnel that he would no longer be receiving the medication because "you only get three days on this type of medication."

73. As a result, Plaintiff's constant testicular pain continued.

Continuing Pain and Suffering

74. As a result of the injury to his genitals, Plaintiff continues to have testicular pain, which increases when Plaintiff engages in physical activities, and he is unable to sustain an erection.

75. Throughout the events stated herein, Plaintiff has suffered physical pain, anxiety, depression, fear of further retaliation and injury from Corporal Muncy, fear of inability to procreate, loss of enjoyment of life, annoyance, inconvenience, stress, and worry.

## CLAIMS

### COUNT I
### VIOLATION OF THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION (EXCESSIVE FORCE)
### (42 U.S.C. § 1983)

76. Plaintiff incorporates and re-alleges, by reference, the allegations of the previous paragraphs of this complaint.

77. Defendants, while acting under the color of law, violated Plaintiff's Fourteenth Amendment due process right to be free of punishment as a pretrial detainee.

78. Defendants violated Plaintiff's federal constitutional right, as described and identified herein, by authorizing, committing, condoning, or failing to remedy the excessive and wrongful force, specifically sexual abuse and sexual harassment.

79. As described herein, Defendant Muncy purposefully and knowingly assaulted Plaintiff without justification by grabbing his testicles and squeezing, while threatening Plaintiff with further sexual assault and rape.

80. Thereafter, Defendant Muncy continued to harass Plaintiff and retaliate against Plaintiff for filing a PREA complaint.

81. Defendant Muncy's actions were not rationally related to a legitimate nonpunitive governmental objective.

82. Upon information and belief, Defendant Thompson knew, or had reason to know, of Defendant Muncy's propensity toward assaults on inmates, but permitted such behavior to proceed unchecked.

83. Upon information and belief, Defendant Thompson was vested with the authority and responsibility to fully and impartially investigate Plaintiff's PREA complaint, but knowingly and willfully failed and refused to do so.

84. Defendant Thompson threatened Plaintiff with disciplinary sanctions if Plaintiff continued to report Defendant Muncy's behavior.

85. Defendant Thompson failed and refused to protect Plaintiff from Defendant Muncy's ongoing retaliation against Plaintiff.

86. These failures by Defendant Thompson created an atmosphere that tacitly condoned the acts of Defendant Muncy, and permitted him to continue to harass and retaliate against Plaintiff.

87. Defendant Jividen is responsible for ensuring that WVDCR have policies and procedures in place that meet the federal PREA requirements, but has failed to do so.

88. Defendant Jividen is responsible for ensuring that WVDCR policies and procedures regarding PREA investigation are implemented, and that investigation are performed as required, but has failed to do so.

89. Defendant Jividen is responsible for ensuring psychological evaluations are performed on prospective correctional officers, and that such officers are reevaluated if needed, but has failed to do so.

90. The actions of the Defendants were in violation of clearly established law.

91. The Fourteenth Amendment to the United States Constitution forbids punishing pretrial detainees, including by the use of excessive force that amounts to punishment and/or which is not rationally related to a nonpunitive governmental purpose.

92. On April 25, 2018, it was clearly established that Defendants' actions violated Mr. Young's constitutional rights as a pretrial detainee. *See, e.g., Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015); *Crawford v. Cuomo*, 796 F.3d 252, 254 (2nd Cir. 2015).

93. Plaintiff suffered harm as the direct and/or proximate result of Defendants' actions, including but not limited to severe and continuing pain in his genitals, loss of use of genitals, including sexual functioning and potential loss of ability to procreate, anxiety, depression, and future loss of enjoyment of life.

94. The actions of Defendants were committed under the color of state law, unreasonable, deliberate, and deprived Mr. Young of clearly established constitutional rights of which a reasonable correctional officer should have known pursuant to the Fourteenth Amendment to the United States Constitution.

95. As a result of the Defendants' unconstitutional actions in violation of the Fourteenth Amendment to the United States Constitution, Plaintiff seeks to recover damages from Defendants Thompson and Muncy that compensate him for:

    A. Actual damages;

    B Physical pain and suffering, past and future;

    C. Mental pain and suffering, past and future;

    D. Humiliation, embarrassment, and degradation; and

    E. All other injuries proven by a preponderance of evidence proximately caused by the Defendants.

96. In addition to these compensatory fees, Plaintiff also seeks to recover, under 42 U.S.C. § 1988, the attorneys' fees and costs incurred during the course of this litigation.

97. Plaintiff additionally requests that this Court issue a declaratory judgment stating that Defendants' actions as set forth herein violated his rights under the Fourteenth Amendment to the United States Constitution.

98. Plaintiff also seeks enforcement of all federal and state laws, policies and procedures currently in effect which are designed to protect Plaintiff from further assaults, including implementation of adequate WVDCR policies and procedures to fully and properly implement federal PREA requirements, as well as psychological examinations and discipline of officers who engage in such activities.

99. The actions by Defendants were reprehensible, willful and wanton, malicious, and in blatant and intentional disregard of the rights owed to Plaintiff, thereby justifying an award of punitive damages.

## COUNT II
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Defendants Muncy and Thompson)

100. Plaintiff incorporates and re-alleges, by reference, the allegations of the previous paragraphs of this complaint.

101. Defendant Muncy intentionally or recklessly conducted himself in an extreme and outrageous manner by grabbing and squeezing Plaintiff's genitals without justification and by stating to Plaintiff that he would "rip off" Plaintiff's penis and "fuck" Plaintiff "in his ass" with it.

102. Defendant Thompson intentionally or recklessly conducted himself in an extreme and outrageous manner when he failed and refused to adequately investigate Plaintiff's PREA complaint against Defendant Muncy, threatened Plaintiff with punishment if Plaintiff continued to

press the matter, continued to station Defendant Muncy on Plaintiff's Pod after having shared Plaintiff's PREA complaint with Defendant Muncy, and refused to address Plaintiff's subsequent requests for help when he was being harassed and retaliated against by Defendant Muncy.

103. Defendants' intentional, extreme, and outrageous conduct proximately caused Plaintiff to suffer severe and ongoing bodily injury, severe emotional distress, humiliation, embarrassment, mental distress, and loss of personal dignity.

104. As a result of such outrageous conduct, Plaintiff has suffered severe physical pain, mental anguish, embarrassment, humiliation, permanent physical injury, and has otherwise greatly been damaged by Defendants' violations of his rights and is therefore entitled to compensatory damages as well as punitive damages.

## COUNT III
## ASSUALT AND BATTERY
### (Defendants Muncy and Thompson)

105. Plaintiff incorporates and re-alleges, by reference, the allegations of the previous paragraphs of this complaint.

106. By threatening Plaintiff with anal rape, Defendant Muncy intended to create an apprehension within Plaintiff of further immediate and repeated physical harm.

107. As a result of Defendant Muncy's conduct and statements, Plaintiff felt threatened and was put in imminent apprehension of being harmed by Defendant Muncy.

108. By grabbing and squeezing Plaintiff's genitals without justification, Defendant Muncy intentionally battered Plaintiff.

109. As a direct result of being battered by Defendant Muncy, Plaintiff suffered severe and lasting pain in his genitals and loss of function of his genitals.

110. By accusing Plaintiff of lying about the sexual assault and threatening punishment if Plaintiff continued to raise the issue, Defendant Thompson intended to create further apprehension within Mr. Young of additional and repeated physical harm.

111. By continuing to station Defendant Muncy on the same Pod as Plaintiff, after informing Defendant Muncy of Plaintiff's PREA complaint against him, Defendant Thompson intended to create an apprehension within Plaintiff of further immediate and repeated physical harm.

112. As a result of Defendant Thompson's conduct and statements, Plaintiff felt threatened and was put in imminent apprehension of being harmed by Defendant Muncy.

113. In addition to the physical injuries caused by Defendant Muncy's excessive uses of force against him, Plaintiff has suffered multiple forms of mental anguish, including but not limited to fear, anxiety, embarrassment, humiliation, and depression.

114. As a direct and/or proximate result of Defendants' assault and battery, Plaintiff seeks to recover damages to compensate him for:

(a) Physical pain and suffering, past and future;

(b) Mental pain and suffering, past and future;

(c) Humiliation, embarrassment, and degradation; and

(d) All other injuries proven by a preponderance of evidence proximately caused by the defendants.

115. The actions or inactions of Defendant Muncy against Plaintiff were reprehensible, willful and wanton, malicious, and in blatant and intentional disregard of the rights owed to Plaintiff, thereby justifying an award of punitive damages.

## PRAYER

**WHEREFORE**, based on the above stated facts, Plaintiff Joshua A. Young respectfully requests that this Honorable Court award all damages, including attorneys' fees and costs, to Plaintiff to compensate him for the injuries he suffered as the direct and/or proximate result of Defendants' actions. Plaintiff also seeks an award of punitive damages to deter other similarly situated correctional officers from committing similar acts. Finally, Plaintiff seeks whatever equitable relief the Court deems appropriate, such as, but not limited to, the injunctive and declaratory relief requested above.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL APPLICABLE CLAIMS.**

                **Respectfully Submitted,**
                **JOSHUA A. YOUNG,**

                By Counsel:

/s/ Lydia C. Milnes
Lydia C. Milnes (State Bar ID No. 10598)
Mountain State Justice, Inc.
325 Willey Street
Morgantown, WV 26505
Phone: (304) 326-0188
Facsimile: (304) 326-0189
lydia@msjlaw.org